RATTET PLLC
*Proposed Attorneys for the Debtor*
202 Mamaroneck Avenue, Suite 300
White Plains, New York 10601
(914) 381-7400
Robert L. Rattet, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| 416 8th AVENUE BBQ, LLC, | Case No.: 19-35778(CGM) |
| Debtor. | |

---------------------------------------------------------X

### DEBTOR'S MOTION REQUESTING USE OF CASH COLLATERAL
### PURSUANT TO BANKRUPTCY CODE SECTION 363(c)(2)
### AND BANKRUPTCY RULE 4001(b)(2)

**TO:   THE HONORABLE CECELIA G. MORRIS,
         CHIEF UNITED STATES BANKRUPTCY JUDGE:**

The above-captioned debtor and debtor-in-possession 416 8th Avenue BBQ, LLC, (the "Debtor"), by its proposed attorneys, Rattet PLLC, hereby submits this motion (the "Motion") for authority to, *inter alia*, use cash collateral, as such term is defined under Section 363(a) of the Bankruptcy Code, in which Washington Business Bank (the "Secured Creditor") has asserted a security interest, on an interim and final basis. In support of this Motion, the Debtor respectfully states as follows:

### JURISDICTION

1.      The Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The statutory bases for the relief requested herein are §§ 363(c)(2) and 361 of Title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "Bankruptcy Code") and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

3. On May 10, 2019 (the "Filing Date"), the Debtor filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code.

4. The Debtor has continued in possession of its business and management of its property pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

5. No trustee, examiner or creditors' committee has been heretofore appointed in this proceeding.

6. The Debtor operates a restaurant under the licensed named *Brother Jimmys* at 416 8th Avenue, New York, New York.

7. The Debtor was formed in 2018 in order to acquire the restaurant premise and enter into a lease for a former *Brother Jimmys* located at 416 8th Avenue, New York, New York (the "Premises").

8. An affiliated entity, 8th Avenue BBQ, LLC, had formerly operated a Brother Jimmys and occupied the Premises for more than 10 years. However, in mid-2018, such entity ultimately lost its lease and ceased operations in their entirety. The Premises had fallen into significant arrears, disrepair and required substantial renovations.

9. The Debtor, with fresh capital, negotiated a new lease with the landlord and acquired, at more than fair market value, the used FF&E left behind by the former entity for $200,000.

10. The new lease commenced on or about December 5, 2018. Under the new lease, the Debtor was required to, and in fact did, post a sizeable letter of credit and make renovations to the Premises in a total amount exceeding $250,000.

11. In addition to the capital raised from its investors at the parent company level, the Debtor obtained a working capital loan from Washington Business Bank in the amount of $300,000, which loan is secured against the Debtor's assets.

12. Unfortunately, the Debtor still needs additional capital to fully fund the security deposit (an additional $180,000) as well as be left with sufficient working capital reserves to operate the business.

13. The business, since inception, is running at a modest loss, leading to the Debtor being unable to pay its full April rent and causing the landlord to seek to terminate the lease (despite this being the only rent arrears to date).

14. The Debtor filed for protection to preserve its business and assets while it attempts to raise additional capital or enter into a strategic transaction for exit from Chapter 11.

15. The Debtor intends to use the Chapter 11 process to expeditiously raise additional capital or sell the restaurant in order to maximize the return to all creditors.

## THE DEBTOR'S PRE-PETITION SECURED DEBT

**Washington Business Bank**

16. On September 12, 2018 the Debtor entered into a Merchant Agreement pursuant to which the Debtor borrowed $300,000 from Washington Business Bank ("Washington" or "Secured Creditor"), which obligation was guaranteed by James Goldman and other affiliated entities (collectively, the "Washington Loan Agreements"). A copy of the Washington Loan

Agreements and the UCC Financing Statement described below thereto are annexed hereto as **Exhibit "A".**

17. The Debtor's repayment obligations under Washington Loan Agreements are secured by first priority liens and security interests in all of the Debtor's property and assets, wherever located and whether not owned or existing or hereafter acquired or arising by virtue of a UCC-1 Financing Statement filed with the New York Secretary of State on September 18, 2018 (the "<u>Washington</u> <u>Collateral</u>").

18. Washington has asserted that the liens and security interests granted to Washington were duly perfected and the Debtor agrees and acknowledges that Washington's liens and security interests in the above described Washington Collateral are senior and superior in time and right to all other liens and security interests in the Washington Collateral except for perfected mechanic's liens or purchase money security interests, if any.

19. As of the Petition Date, the outstanding aggregate amounts due Washington from the Debtor under the Washington Loan Agreements was approximately $232,927.26.

**B.** **<u>416 8th Owner, LLC</u>**

20. On January 25, 2019, the Debtor's landlord, 416 8th Owner ("Landlord") unilaterally and without the Debtor's knowledge and actual consent, filed a UCC-1 Financing Statement with the New York Secretary of State. The Debtor does not have a copy of the financing statement so it is unsure as to what extent the UCC-1 attaches to the Debtor's assets.

21. The Debtor's lease, however, requires the Debtor, in order to secure its obligations under the lease, to deliver to the Landlord either a security agreement or UCC1 with respect to the granting of a security interest in all of the Debtor's trade fixtures and equipment

installed after the lease commencement date. An excerpt of the Lease containing the granting of the security interest described above is annexed hereto as **Exhibit "B"**.

22. Upon information and belief, the Debtor never executed a security agreement or delivered a UCC to the Landlord.

23. Moreover, the Debtor does not believe that the collateral/interest described in the lease, assuming such interest was properly perfected by the Landlord, constitutes cash collateral within the meaning of Section 363(c)(2) of the Bankruptcy Code. Notwithstanding, the Debtor is bringing the issue to the Court's attention for purposes of full and complete disclosure and is willing to grant the Landlord a replacement lien to the extent such interest was valid, perfected and unavoidable as of the Petition Date in the same and continuing priority that existed as of the Petition Date.

**RELIEF REQUESTED AND BASIS FOR RELIEF**

24. The Debtor submits this Motion for authority to use property which may constitute cash collateral in which Washington and the Landlord (collectively, as applicable, the "Secured Creditors") each may have asserted a security interest in said cash collateral, substantially in accordance with the terms and conditions set forth in the proposed Interim Order Authorizing Use of Cash Collateral and Granting Adequate Protection (the "Interim Order") attached hereto as **Exhibit "C"**. The Debtor believes that these parties are the only creditors of the Debtor that may or allegedly have asserted a security interest in the Debtor's property which may constitute Cash Collateral.

25. The proposed Interim Order grants the Debtor the authority to use cash collateral pursuant to 11 U.S.C. §§363 (c)(1) and (2) and Bankruptcy Rule 4001(c) to the extent necessary

to pay for its ongoing administrative expenses and to preserve the value of its estate pending a final hearing.

26. § 363(a) of the Bankruptcy Code states as follows:

> "In this section, "cash collateral" means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of properties subject to a security interest as provided in Section 552(b) of this title, whether existing before or after the commencement of a case under this title."

27. § 363(c)(1) of the Bankruptcy Code provides as follows:

> "(c)(1) If the business of the debtor is authorized to be operated under section 721, 1108, 1304, 1203, or 1204 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing".

28. § 363(d) of the Bankruptcy Code provides as follows:

> "(d) The trustee may use, sell, or lease property under subsection (b) or (c) of this section only to the extent not inconsistent with any relief granted under section 362(c), 362(e), or 362(f) of this title".

29. Accordingly, pursuant to § 363(c)(2) of the Code, the consent of the Secured Creditors or authority from this Court is required to use cash collateral in which the Secured Parties assert competing security interests.

30. The purpose of adequate protection is to ensure that the secured creditor receives the value for which it bargained pre-bankruptcy. In re Swedeland Development Group, Inc., 16 F.3d 552 (3rd Cir. 1994); In re Dunes Casino Hotel, 69 B.R. 784, 793 (Bankr, D.N.J. 1986), citing In re Coors of the Cumberland, 19 B.R. 313 (Bankr. M.D. Tenn. 1982) See In re 495 Central Park Ave. Corp., 136 B.R. 626 (Bankr. S.D.N.Y. 1992). Adequate protection is designed

to safeguard the secured creditor from diminution in the value of its interest during the Chapter 11 reorganization. In re Nice, 355 B.R. 554, 563 (Bankr. N.D. Va. 2006) ("adequate protection is solely a function of preserving the value of the creditor's secured claim as of the petition date due to a debtor's continued use of the collateral").

31. Because the term "adequate protection" is not defined in the Bankruptcy Code, the precise contours of the concept are necessarily determined on a case-by-case basis. MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393 (10th Cir. 1987). In re Snowshoe Co., 789 F.2d 1085, 1088 (4th Cir. 1086); In re Mosello, 195 B.R. 277, 289 (Bankr. S.D.N.Y. 1996); In re Beker Industries Corp., 58 B.R. 725 (Bankr. S.D.N.Y. 1986); see also In re JKJ Chevrolet, Inc. 190 B.R. 542, 545 (Bankr. E.D.Va. 1995) (adequate protection is a flexible concept that is determined by considering the facts of each case).

32. The Interim Order provides that in addition to the existing rights and interests of the Secured Creditors and for the purpose of adequately protecting Secured Creditors from Collateral Diminution[1], the Secured Creditors are hereby granted replacement liens ("Replacement Liens") in their respective Collateral, *but only* to the extent that said liens were valid, perfected and enforceable as of the Filing Date in the continuing order of priority of their re-petition liens without determination herein as to the nature, extent and validity of said pre-petition liens and claims and to the extent Collateral Diminution occurs during the Chapter 11 case, subject to: (i) the claims of Chapter 11 professionals duly retained and to the extent awarded pursuant to Sections 330 or 331 of the Bankruptcy Code or pursuant to any monthly fee order entered in the Chapter 11 case; (ii) United States Trustee fees pursuant to 28 U.S.C.

---

[1] For purposes of this Order, "Collateral Diminution" shall mean any diminution in value of the Secured Creditors' interests in Debtor's property as of the Filing Date by reason of Debtor's use of Cash Collateral in accordance with this Order.

Section 1930 and 31 U.S.C. Section 3717; and (iii) the proceeds of any recoveries of estate causes of action under Sections 542 through 553 of the Bankruptcy Code.

33. In addition to the liens and security interests proposed to be granted pursuant hereto, the Debtor shall make monthly adequate protection payments to Washington in an amount equal to the monthly interest due on the outstanding sums due under the Washington Loan Agreements at the contract rate of interest provided thereunder.

34. The proposed adequate protection to the Secured Creditors is appropriate because it is designed to protect the Secured Creditors against diminution in the value of Secured Creditors' interest in the Cash Collateral. As such, under the terms and provisions of the Interim Order, the Secured Creditors' interest in the Cash Collateral is adequately protected.

35. The Debtor proposes to use the Cash Collateral only for ordinary and necessary administrative expenses substantially in accordance with the 13- week budget annexed hereto as **Exhibit "D"** (the "Budget"). The Debtor believes that the Budget includes all reasonable, necessary and foreseeable expenses to be incurred in the ordinary course of administration of the Chapter 11 case for the period set forth in the Budget. The Debtor believes that the use of cash collateral in accordance with the Budget will provide the Debtor with adequate liquidity to pay administrative expenses as they become due and payable during the period covered by the Budget.

## REQUEST FOR WAIVER OF STAY

36. The Debtor further seeks a waiver of the stay of the effectiveness of the Interim Order that may be imposed by any applicable Bankruptcy Rule. As set forth above, the use of cash collateral is essential to prevent potentially irreparable damage to the Debtor's operations,

value and ability to reorganize. Accordingly, the Debtor submits that sufficient cause exists to justify a waiver of any stay imposed by the Bankruptcy Rules, to the extent applicable.

## **WAIVER OF MEMORANDUM OF LAW**

37. The Debtor respectfully requests that the Court dispense with the requirement under Rule 9013-1 of the Local Rules of the Bankruptcy Court for the Southern District of New York, of filing a Memorandum of Law in connection with this Application, in that there are no novel or difficult legal issues presented in the motion and the Application includes citations to applicable authority.

## **NOTICE**

38. This Motion will be served on notice to all parties asserting secured claims against the Debtor, and all other parties entitled to notice pursuant to Bankruptcy Rule 4001(d) and in accordance with the Order Scheduling Hearing on Shortened Notice.

**WHEREFORE**, the Debtor respectfully requests entry of the proposed Interim Order, approving and authorizing the use of Cash Collateral pursuant to and in accordance with this Motion and the proposed Interim Order, together with such other and further relief as is just and proper under the circumstances.

Dated: White Plains, New York
May 10, 2019

RATTET PLLC
*Proposed Attorneys for the Debtor*
202 Mamaroneck Avenue, Suite 300
White Plains, New York 10601
(914) 381-7400

By: */s/ Robert L. Rattet*
     Robert L. Rattet
